United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Securities and Exchange Commission, Plaintiff, <br><br>v.<br><br>Brook Church-Koegel and others, Defendants. | )<br>)<br>)<br>)<br>) Civil Action No. 20-21001-Civ-Scola<br>)<br>)<br>) |

### **Omnibus Order**

This matter is before the Court on Defendants David H. Goldman, Brook Church-Koegel, and Nicole J. Walker's respective motions to dismiss or, in the alternative, transfer this action to the United States District Court for the Central District of California for *forum non conveniens*. (Goldman Mot., ECF No. 28; Church-Koegel Mot., ECF No. 38; Walker Mot., ECF No. 39.) Plaintiff Securities and Exchange Commission ("SEC") has responded to each motion, and the Defendants have each replied. Having reviewed the record, the parties' briefs, and the relevant legal authorities, the Court **grants** the motions (**ECF Nos. 28, 38-39**).

### I.  **Background**

The SEC filed its complaint against the Defendants on March 5, 2020, alleging that they were among the top revenue-producing salespersons for Woodbridge, purportedly a Ponzi scheme. (ECF No. 1 at ¶1.) Woodbridge "is a Sherman Oaks, California-based financial company" purportedly not registered with the SEC and with no publicly traded stock. (*Id.* at ¶10.) The Defendants are also all California-based, each residing in the Central District of California. (*Id.* at ¶¶ 7-9.) From July 2012 through December 2017, Woodbridge raised at least $1.22 billion from more than 8,400 investors nationwide through allegedly fraudulent unregistered securities offerings. (*Id.*) The company claimed that it was using investors' funds to make high interest rate loans to third-party borrowers. In reality, the SEC claims, investors' funds were used to purchase almost 200 residential commercial properties "primarily in Los Angeles, California and Aspen, Colorado" for entities whose beneficiary was Woodbridge's owner. (*Id.* at ¶27.)

The Defendants allegedly personally solicited and sold Woodbridge securities in unregistered transactions to many of these investors. (*Id.* at ¶2.)

The SEC claims that the Defendants, acting as unregistered brokers, were jointly responsible for raising approximately $444 million between June 2014 and December 2017 from thousands of investors in more than 40 states. (*Id.* at ¶4.) Church-Koegel in particular is alleged to have sold or assisted in the sale of unregistered securities to approximately 1,600 investors; Goldman to approximately 2,800 investors; and Walker to approximately 1,000 investors. (ECF No. 1 at ¶33.) The complaint alleges that Church-Koegel and Goldman each received over $1 million in transaction-based compensation, and that Walker received more than $750,000, in addition to their salaries from 2014 to 2017 while they were employed by Woodbridge in California. (*Id.* at ¶¶ 1, 39.)

The complaint also details how much of the Defendants' overall participation in the scheme took place in this District. Of the Defendants' total sales (approximately $444 million), Church-Koegel "directly" solicited and sold at least $1.8 million in securities to eight investors in this District; Goldman directly solicited and sold at least $960,000 to nine investors in this District; and Walker directly solicited and sold at least $100,000 to two investors in this District. Additionally, each Defendant is alleged to have "coordinated with and assisted" three or four "external sales agents" located in this District in additional sales. (ECF No. 1 at ¶14.) Church-Koegel was allegedly indirectly involved in an additional $10.5 million in sales in this District; Goldman an additional $59 million in this District; and Walker an additional $2.5 million in this District (*Id.*) Finally, two of the three Defendants, Church-Koegel and Goldman, are alleged to have visited Florida. Church-Koegel allegedly met with external sales agents and investors on three occasions, and once met "potential investors" in Palm City, Florida where he showed them properties "on Google Earth." (*Id.*) Goldman allegedly traveled once to Florida "to meet with some of the highest revenue-producing external sales agents." (*Id.*) Walker is not alleged to have traveled to Florida at any time.

## II. Legal Standard

"A district court may transfer a civil action to any other district or division where it may have been brought '[f]or the convenience of the parties and witnesses, and in the interest of justice.'" *Perlman v. Delisfort-Theodule*, 451 Fed. App'x 846, 848 (11th Cir. 2012) (quoting *Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citing 28 U.S.C. § 1404(a)). However, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Id.* (quoting *Robinson*, 74 F.3d at 260). The movant bears the burden to persuade the court to transfer an action. *Id.*; *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989); *Mason v. Smithkline Beecham Clinical*

*Labs.*, 146 F.Supp.2d 1355, 1359 (S.D. Fla. 2001). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843 (1947); *see also Acrotube, Inc. v. J.K. Financial Group, Inc.*, 653 F.Supp. 470, 477 (N.D. Ga. 1987) (To justify a transfer, the moving party must "demonstrat[e] that the balance of convenience and justice weighs heavily in favor of the transfer. Accordingly, when assessing a motion under section 1404(a), a court must consider whether a transfer would make it substantially more convenient for the parties to produce evidence and witnesses.") (citations omitted).

A transfer in the interest of justice is discretionary in the Eleventh Circuit. *See Pinson v. Rumsfeld*, 192 Fed. App'x 811, 817 (11th Cir. 2006). The Eleventh Circuit has identified nine factors to assist courts in exercising this discretion. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). This analysis includes examining the following factors, which the party seeking transfer has the burden to demonstrate: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Id.* When the analysis of a factor results in a "neutral" outcome, that factor does not favor transfer. *Watson v. Community Edu. Ctrs.*, 2011 WL 3516150, at *5 (M.D. Fla. Aug. 11, 2011).

### III. Analysis

As an initial matter, the parties do not dispute that venue is proper in this District and that it would be proper in the Central District of California. Rather, the Defendants' argument is that this particular venue, the Southern District of Florida, is materially less convenient than the Central District of California. Although the Defendants seek transfer under the doctrine of *forum non conveniens*, the Court will construe their motions as motions to transfer under 28 U.S.C. § 1404(a). Section 1404 has codified the *forum non conveniens* doctrine in the context of motions to transfer. The Court now proceeds to weigh each of the nine transfer factors set forth in *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

**1) The convenience of the witnesses.**

The convenience of witnesses is one of the most important factors in the Section 1404(a) analysis. *See Electronic Transaction Network v. Katz*, 734 F.Supp. 492, 501 (N.D. Ga. 1989). To satisfy this factor, courts have held that the movant must specify the key witnesses to be called, their expected testimony, and the inconvenience to them should the action remain in the plaintiff's chosen forum. *Id.*; *see also Proven Winners, N.A., LLC v. Cascade Greenhouse*, Case No. 2:06-cv-428, 2007 WL 1655387, at *3 (M.D. Fla. June 6, 2007).

The Defendants have identified over 50 witnesses by name and location, the majority of whom reside in California. (*See, e.g.*, ECF No. 31 at 3-4; ECF No. 38 at 4-5; ECF No. 39 at 4-5.) The Defendants also indicated the expected testimony of several of these witnesses. Specifically, they argue that the primary question in this case is whether the products that they marketed were technically securities and whether they required a securities license to market them. (*See* ECF No. 38 at 3; ECF No. 39 at 3.) To that end, Church-Koegel and Walker claim that their supervisors in California, some of whom appear to be on their witness list, told them numerous times that the products they sold were not securities that needed to be registered. (*See* ECF No. 38 at 2.) Goldman adds that the dozens of witnesses on his list "can each provide highly important testimony about the nature of the Woodbridge business and the respective duties and roles of the co-defendants." (ECF No. 31 at 3.) The SEC points out that three of the 58 witnesses identified by Church-Koegel and Walker are in Connecticut that those three witnesses are attorneys whose testimony would presumably be quite important to the extent that the Defendants are foreshadowing an "advice of counsel" defense. (ECF No. 40 at 2.) The Court agrees with the SEC's argument that the convenience factor does not favor transfer with respect to the three Connecticut-based witnesses. Those witnesses would have to travel no matter whether the case is transferred. However, that leaves 55 other witnesses, the overwhelming majority of whom are in California. At this point, the Court underscores that this factor is not always won by the party that can muster the longest witness roster. Such a rule would create poor incentives. However, in this case, the Defendants have identified over 50 witnesses by name, location, and, generally, by expected testimony. The SEC has identified no witnesses with such precision. The balance tips decidedly in the Defendants' favor.

The Court acknowledges that Goldman, whose motion was filed over one month before Church-Koegel and Walker's motions, neglected to identify his proposed witnesses by name in his opening brief. Instead, he only listed their names in his reply brief. Although the general rule is that "arguments raised for the first time in a reply brief are not properly before a reviewing court," the Court

finds that some leniency is in order. *Herring v. Secretary, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005). First, the information raised by Goldman concerning his witness list is encompassed almost entirely by the subsequently filed witness lists that accompanied his co-defendants' motions. Accordingly, the SEC has had an opportunity to respond to the contents of that list and in fact did respond to the witness lists in the subsequent motions. In the SEC's responses to Church-Koegel and Walker's motions, it "adopt[ed] and incorporate[d]" its response in opposition to Goldman's motion. (*See* ECF No. 40 at 1.) Second, the Court is "mindful of the fact that [the Defendant] is *pro se* and is therefore entitled to some leniency" as a general matter. *McDowell v. Gonzalez*, Case No. 19-cv-23110, at *8 (S.D. Fla. Dec. 2, 2019) (Bloom, J.).

Finally, the Court finds that the SEC's reliance on *Reyes v. JA & M Developing Corp.*, is misplaced. Case No. 12-61329-CIV, 2012 WL 3562024 (S.D. Fla. Aug. 17, 2012). The SEC cited to *Reyes* for the proposition that a party must specify how a particular forum unduly burdens a witness as compared to the proposed alternative forum. The holding of *Reyes* was not so broad. That case did indeed deny a motion to transfer venue where the movants failed to provide "any specifics on undue inconvenience for any witnesses." *Id.* at *5. However, the remainder of the paragraph excerpted by the SEC in its response brief explains that the movants failed to show that transfer between two courthouses "*roughly thirty miles apart*" and within the Southern District of Florida was justified. *Id.* at *5 (emphasis added). In this case, the relative inconvenience to over 50 non-party witnesses between fora on two coasts – *thousands of miles apart* – speaks for itself.

### 2) The location of relevant documents and the relative ease of access to sources of proof.

The Court agrees with the SEC that the access to evidence factor is neutral in this case and does not weigh in favor of transfer of venue. *See Motorola Mobility, Inc. v. Apple, Inc.*, 2012 WL 3113932, at *7 (S.D. Fla. July 31, 2012) (Scola, J.) ("modern methods of transportation and communication have largely ameliorated the burdens of moving discovery from place to place"); *Microspherix LLC v. Biocompatibles, Inc.*, 2012 WL 243764 at *3 (S.D. Fla. Jan. 25, 2012) (Moore, J.) ("In a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant.").

### 3) The convenience of the parties.

The Defendants argue that it would be much more convenient for this case to proceed in the Central District of California for several reasons. First, they could appear in person for all hearings and trial. Second, this Court would not be burdened with arranging for telephonic and video appearances. Third, they would be in a better position to call upon their contacts in California for legal assistance, which they state is impossible for them to do in the Southern District of Florida. Finally, Goldman adds a fourth reason, which is that transfer would save the significant expense of cross-country physical mailing. The Court also notes that all of the Defendants reside in California.

The minor inconveniences of telephonic or video-conferencing do not persuade the Court that this factor tips in favor of transfer. Over the course of the COVID-19 pandemic, these technologies have generally been efficient and reliable substitutes for many in-person proceedings. As the SEC points out, "[t]he widespread availability of video-conference for court hearings and depositions also minimizes the need for travel." (ECF No. 30 at 10 n.6.) Thus, litigation today for remote parties may require less travel than it did in very recent history. Accordingly, the travel factor is neutral.

The Court is persuaded that the Defendants' claims that they are unable to obtain counsel in this District without difficulty and that they reside in the Central District of California both slightly favor transfer. Walker, for example, submitted a declaration stating that "it would be an extreme hardship to find a lawyer [in the Southern District of Florida] to assist [her] with this case," whereas she could more easily obtain legal assistance in California where she has worked and lived for close to two decades. (ECF No. 39-1 at ¶9.) The SEC argues that Walker "does not currently reside in California" because she was served with process in New York while caring for her elderly parents. (ECF No. 40 at 3.) Walker's sworn declaration states that she does reside in California, where she has lived for decades, even though she is "currently caring for [her] elderly parents" in New York. (ECF No. 39-1 at ¶4.) Thus, it appears that all of the Defendants do reside permanently in California. The SEC also appears to suggest that the Defendants can afford counsel because they earned compensation in the hundreds of thousands of dollars starting over six years ago and ending nearly three years ago. (*See, e.g.*, ECF No. 30 at 2.) However, the Defendants' wherewithal lands somewhere between neutral and in favor of transfer. For example, Church-Koegel and Walker argue that "[a]s the SEC well knows, as part of the resolution of the Woodbridge bankruptcy, [they] waived [their] substantial claim for unpaid salary. [They] ha[ve] virtually nothing left . . . ." (ECF No. 42 at 4; ECF No. 43 at 3.) Finally, the SEC did not respond to Goldman's concerns

about costly cross-country mailing. Although this does not appear to be a major consideration, Goldman did raise the issue and it does tip ever so slightly in the Defendants' favor. *Cf. GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 (S.D. Fla. 2017) (Altonaga, J.) (treating argument ignored by plaintiff's brief in response to motion to dismiss as conceded) (citing *Hartford Steam Boiler Inspection & Ins. Co. v. Brickellhouse Condo. Ass'n, Inc.*, No. 16-CV-22236, 2016 WL 5661636, at *3 (S.D. Fla. Sept. 30, 2016) (Gayles, J.) ("[A] plaintiff who, in [its] responsive brief, fails to address [its] obligation to object to a point raised by the defendant implicitly concedes that point.") (citation omitted)). The Court disagrees with the SEC that "transfer would merely shift the inconvenience from [the Defendants] to the [SEC]." (ECF No. 30 at 11.) These factors are unique to the Defendants. As explained further below, the SEC does not "reside" solely in this District and the SEC's counsel is equally capable of representing it (and in fact does represent it in related cases) in the Central District of California.

The Court has considered the convenience to the Defendants if this case were transferred, and the Court now balances that against the convenience to the SEC of not transferring this case. At the outset, the Court notes that this factor calls for a balancing of the convenience to the *parties* – not their attorneys. In *SEC v. Savoy Indus., Inc.*, the SEC successfully defeated a transfer motion because it "alleged that transfer would be inconvenient for *it* (as opposed merely to being inconvenient for its attorneys)." 587 F.2d 1149, 1155 (D.C. Cir. 1978) (emphasis added) (parentheses in original). Here, however, the SEC emphasizes the travel burden on its local litigation team. First, that is an inconvenience to the SEC's attorneys and not the parties. *See id.* Second, even if that inconvenience factored into the total balance, it would be neutral at best because it would be offset by the corresponding inconvenience to the Defendants. The Court is not persuaded that the inconvenience to the SEC's attorneys is sufficient "to countervail the inconvenience of requiring a party to defend its actions in a forum" where a minority of "those actions took place and requiring non-party witnesses to travel far from their place of residence." *S.E.C. v. Ernst & Young*, 775 F. Supp. 411, 415–16 (D.D.C. 1991) ("[T]he concerns raised seem to relate far more to the convenience of SEC attorneys than to the SEC itself."). On balance, the Defendants would be more inconvenienced by denial of the motion than the SEC would be inconvenienced by transfer. This factor weighs in favor of the Defendants.

### 4) The locus of operative facts.

The Southern District of Florida is home to a minority of the conduct at issue. Instead of arguing that this District is the locus of operative facts, the SEC argues that the Court should not "reward" the Defendants with transfer. The converse of this argument is that the Court should deny the motion to punish the Defendants at this stage of the case. Specifically, the SEC argues that "[w]hat [the Defendants] [are] really saying is that [they] should be rewarded because [they] made more money, off more investors, . . . in the Central District of California than [they] did in this District. That [the Defendants] found more success violating the securities laws [there] than [they] did [here]" does not justify transfer. (ECF No. 30 at 11.) This notion of transfer as a matter of reward and punishment finds no basis in Eleventh Circuit law. Besides the fact that this policy argument does not speak to the locus of the case, it would be inappropriate for the Court to deny a motion as a way of dispensing punishment upon the movants based on as-yet unproven allegations.

The Court now proceeds to the task at hand, which begins with considering what it means to be the "locus" of a nationwide, billion-dollar Ponzi scheme with thousands of investors. That question is more difficult to answer here than in, say, a garden variety case arising from a car accident. Although neither party offers a definition for the locus, several cases offer guidance. The court in *S.E.C. v. Telco Mktg. Servs., Inc.*, held that the locus was the forum that was home to "the majority of investors." Case No. CA 79-1827, 1980 WL 1397, at *1 (D.D.C. Mar. 26, 1980). In *Grail Semiconductor,* this Court held that the Southern District of Florida was not the locus where "less than one-tenth of one percent of the shares at issue" in the case were transferred to a South Florida resident. 2013 WL 2243961, at *1. In *Swift v. BancorpSouth Bank*, the Court held that the locus was the district of the defendant's headquarters because that is where the complained-of "policy decision" was made that triggered "multitudes of other transactions" in various districts. Case No. 1:10-cv-00090-MP-GRJ, 2014 WL 12856701, at *3 (N.D. Fla. June 04, 2014). Finally, in the patent infringement context, courts search for "the center of gravity of the accused activity." *Trace–Wilco, Inc., v. Symantec Corp.*, 2009 WL 455432, at *23 (S.D. Fla. Feb. 23, 2009) (Marra, J.). Under any of the aforementioned rubrics, the locus is in the Central District of California and not here.

Goldman argues that the locus of operative facts is in California because "all of the events at issue in the Complaint (meaning Goldman's performance of his job at Woodbridge) occurred in California, almost all of the potential witnesses are in California and virtually none are located in Florida." (ECF No. 28 at 4.) Goldman's co-defendants echo this argument and state that they

worked for Woodbridge in California for several years. (ECF No. 38 at 2; ECF No. 39 at 2.) While the SEC does not address that the "center of gravity" is in California, it does emphasize that some activity did take place in Florida. However, its emphasis on that relatively minor activity only proves the Defendants' points.

The SEC is suing to hold the Defendants liable for all of their purportedly fraudulent conduct—not just the relatively little conduct that took place here. Taken as a percentage of the total amount of investors allegedly defrauded by the Defendants (approximately 5,400), the Defendants' direct sales to 19 investors in this District amounts to 0.35%. Taken as a percentage of the Defendants' total sales on behalf of Woodbridge (approximately $444 million), the Defendants' direct sales to investors in this District (totaling approximately $2,860,000) amounts to 0.6% of their total allegedly wrongful conduct. Even extending every possible benefit to the SEC by factoring in the Defendants' *indirect* sales in this District shows that less than 17% of their total activity took place here. More importantly, this District is home to 0.6% of sales directly attributable to these Defendants and 0.35% of their total victims. *See Telco Mktg. Servs., Inc.*, 1980 WL 1397, at *1 (D.D.C. Mar. 26, 1980).

The SEC's rebuttal is as follows: "Those numbers mean nothing." (ECF No. 30 at 11.) The Court is not persuaded by that argument. Those numbers guide the Court's identification of the locus of operative facts and, as set forth by the Eleventh Circuit, that is the issue to be determined. The SEC's reliance on *SEC v. Lefkowitz* is unavailing. Case No. 8:12–cv–1210, 2013 WL 12170295, at *6 (M.D. Fla. Sept. 17, 2013). While it is true that *Lefkowitz* held that "the key operative facts occurred in a Sarasota Court," the Court reached that factual finding because those "Defendants appeared *fifty-eight times in a Sarasota Court*" to perpetuate their fraud. *Id.* at 5-6 (emphasis added). By contrast, Defendant Walker appeared zero times in this District; Goldman only once; and Church-Koegel only three or four times. (ECF No. 1 at ¶14.) This factor weighs heavily in favor of transfer.

### 5) The availability of process to compel the attendance of unwilling witnesses.

All parties in this proceeding can compel the attendance at trial of unwilling witnesses, regardless of whether this litigation is pending in this District or the Central District of California. *SEC v. Feng*, Case No. 15-9420, 2016 WL 7443220, at *4 (C.D. Cal. Apr. 7, 2016) (noting nationwide subpoena power in finding convenience of witnesses did not support transfer). Additionally, the Dodd-Frank Wall Street Reform and Consumer Protection Act gave parties

in proceedings brought by the SEC nationwide service of process for trial subpoenas. This expanded power was codified in Securities Act Section 22(a) and Exchange Act Section 27. 15 U.S.C. §§ 77v(a), 78aa(a). Accordingly, the availability of process to compel the attendance of unwilling witnesses is a neutral factor in this case.

### 6) The relative means of the parties.

The Court agrees with the SEC that the relative means of the parties is a neutral factor. (ECF No. 30 at 12.) First, the Court gave the Defendants' claims that they "ha[ve] virtually nothing left" or that they struggle to afford the cost of cross country mailing some credence in the convenience of the parties factor. (ECF No. 42 at 4; ECF No. 43 at 3.) However, neither party has submitted evidence as to their financial condition. Accordingly, it would not be appropriate to double count the Defendants' unverified claims as to their means under this factor. The SEC has also not submitted any evidence as to its means or the means of the Defendants, which it alludes to in its briefs. This factor is neutral.

### 7) The forum's familiarity with the governing law.

The Court agrees with the SEC that this District and the Central District of California are equally capable of applying the federal securities laws upon which the SEC bases its claims. (ECF No. 30 at 13.) This factor is neutral.

### 8) The weight accorded a plaintiff's choice of forum.

This factor does not weigh against transfer. As a general rule, Court's "must give considerable weight to plaintiff's choice of forum." *Allied Specialty Ins. Inc. v. Ohio Water Parks, Inc.*, 699 F.Supp. 878, 882 (M.D. Fla. 1988). That general rule is subject to at least three exceptions. First, "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Grail Semiconductor, Inc. v. Stern*, No. 12-60976-CIV, 2013 WL 2243961, at *3 (S.D. Fla. May 21, 2013) (Scola, J.) (citations omitted); *see also GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1322 (S.D. Fla. 2017) (Altonaga, J.) ("[D]eference usually afforded to the plaintiff's choice of forum is diminished where the locus of operative facts lies elsewhere and other factors tip in favor of another venue."). As discussed in Part III.4., *supra,* this District is not the locus of operative facts, which reduces the amount of deference owed to the SEC's choice of forum.

Second, a plaintiff's choice of forum "is entitled to less deference . . . when the plaintiff[] do[es] not reside" in its chosen forum. *Nat'l Tr. Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1246 (M.D. Fla. 2016). The SEC has not addressed this issue. Instead, it cites to *SEC v. Daly* for the general proposition that "the Court should give substantial deference to [the SEC's] chosen forum". (ECF No. 30 at 13 (quoting *SEC v. Daly*, No. 05–55, 2006 WL 6190699, at *4 (D.D.C. Feb. 11, 2006)).) However, *Daly* does not stand for the proposition that the SEC, as a litigant, is entitled to a special degree of deference greater than any other litigant before the Court. *Daly* simply reiterated the black letter, general rule that a plaintiff's chosen forum is entitled to substantial deference when the main facts underlying the case took place in that chosen forum. *See id.* (explaining that "SEC filings based on Defendant's alleged misrepresentations were made in the District of Columbia"). Nevertheless, the Court has considered what the SEC's "residence" is for transfer purposes and concludes that this consideration is either neutral or it further diminishes the deference owed to the SEC's choice of forum. On the one hand, the SEC could be a resident of every district in which it has an office. If that were the case, then this factor would be neutral because the SEC has offices in both the Southern District of Florida as well as the Central District of California. In other words, the SEC "resides" here as much as it does there. On the other hand, if the SEC resides in Washington, D.C., the location of its headquarters, then it is not a resident of this District and its choice of forum is entitled to less weight. *See Nat'l Tr. Ins. Co.*, 223 F. Supp. 3d at 1246 (M.D. Fla. 2016).

Finally, the third exception reduces the amount of deference when the plaintiff's choice of forum is motivated by forum shopping or bad faith. The Court disagrees with the Defendants' arguments that this exception applies here. The Defendants suggest that the SEC chose to bring this case in Florida in order to hamstring them as out-of-towners without means to defend themselves on the other side of the country. (*See* ECF No. 28 at 4; ECF No. 38 at 1; ECF No. 39 at 1.) The Defendants also suggest that their arguments of bad faith are bolstered by their identification of inaccuracies in sworn affidavits made in the returns of service on the Defendants. (ECF No. 28 at 4; ECF No. 38 at 6; ECF No. 39 at 5-6.) The Court does not credit these arguments. The SEC's choice to bring this case in Florida was legitimate. For example, the SEC's "Miami Regional Office, which is handling the investigation and litigation of this action," is located in the Southern District of Florida as are some of the victims of the scheme. (ECF No. 30 at 1.) There is also no dispute that venue is proper here. Additionally, after the Defendants claimed that the SEC filed perjured sworn affidavits made by the process server, the SEC "further inquir[ed] into the specific details" raised by the Defendants. (ECF No. 25 at 2.) When the SEC determined that it did "not have

sufficient information confirming that the Defendants were properly served with process," the SEC proceeded to serve the Defendants properly and file new returns of service. (*Id.*) There is no evidence of forum shopping or bad faith by the SEC.

### 9) Trial efficiency and the interests of justice, based on the totality of the circumstances.

The ninth factor favors transfer to the Central District of California. A "relevant consideration when considering a § 1404(a) transfer" under the totality of the circumstances is "[t]he presence of related cases" in the proposed transferee forum. *S.E.C. v. Daly*, Case No. CIV.A. 05-55CKK, 2006 WL 6190699, at *5 (D.D.C. Feb. 11, 2006) (citations omitted). As the Defendants point out, there are at least two closely related cases pending in the Central District of California. The first is *SEC v. Pittsenbargar*, Case No. 2:19-cv-10059 (C.D. Cal. Nov. 25, 2019). The individual defendant in that case was a Texas resident who allegedly sold unregistered securities in multiple states on behalf of Woodbridge, but the SEC argued that venue was proper in the Central District of California because Woodbridge was headquarted in and ran its operations from that District. (*Id.* at ¶¶ 4, 12.) The same is true in this case. Moreover, the two lead attorneys in *Pittsenbargar*, who filed that case and chose to litigate it in the Central District of California, are also the two attorneys representing the SEC in this case. (*See id.*, ECF No. 1.) Counsel in this case also made similar arguments in favor of venue in the Central District of California in yet another related case against other Woodbridge salespeople, *SEC v. Davis*, Case No. 2:18-cv-10481, (C.D. Cal. Dec. 18, 2018). By not responding to this point raised by the Defendants, the SEC concedes it. *See GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 (S.D. Fla. 2017) (Altonaga, J.) (treating argument ignored by plaintiff's brief in response to motion to dismiss as conceded).

"It is, moreover, vastly preferable to have all parties represented by counsel in order to promote efficient and just case management," which appears more likely to occur if the case proceeds in the Central District of California. *Brunson v. Montgomery Cnty.*, Case No. 3:16-cv-00368, 3 (S.D. Ohio Aug. 3, 2017); *see also Sec'y of U.S. Dep't of Labor v. Kavalec*, Case No. 1:19-CV-00968, 8 (N.D. Ohio Nov. 1, 2019) ("[E]fficient adjudication of the issues will be improved if all of the parties are represented by counsel."); *Grigsby v. Haverhals*, Case No. 3:13-cv-579-NJR-DGW, 2 (S.D. Ill. Feb. 2, 2016) ("[T]he appointment of counsel will likely ensure that the final pretrial conference and trial run more efficiently."). As this ninth factor specifically calls for considerations of trial efficiency and the interests of justice, the Court finds that it weighs heavily in favor of transfer.

### IV. Conclusion

As discussed above, all of the relevant factors either support transfer of this case to the Central District of California or are neutral. Accordingly, the Court **grants** the Defendants' motions to transfer (**ECF Nos. 28, 38-39**). This action shall be **transferred** to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). The Clerk shall take all necessary steps to effectuate the transfer of this action. Any pending motions are **denied as moot**. The Clerk is directed to **close** this case.

**Done and ordered** in chambers, at Miami, Florida, on September 15, 2020.

Robert N. Scola, Jr.
United States District Judge